UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 1537 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| COOK COUNTY, Cook County Jail | ) | |
| Correctional Officers DANIEL WEYER, Star | ) | |
| 17565, ANTONIO HUGHES, Star Unknown, | ) | |
| MARIO SPIZZIRRI, Star Unknown, and | ) | |
| THOMAS J. DART, Cook County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In February 2019, Benjamin Williams was a pretrial detainee at the Cook County Jail ("CCJ"), which the Cook County Department of Corrections ("CCDOC") operates. Williams alleged that three correctional officers, Daniel Weyer, Antonio Hughes, and Mario Spizzirri (the "Defendant Officers"), sexually assaulted him or ignored his requests for help multiple times over a span of several days. After filing a series of inmate grievances with the CCJ, which the administration serially rejected, Williams sued the Defendant Officers, Cook County Sheriff Thomas Dart, and Cook County ("Defendants") in this Court pursuant to 42 U.S.C. § 1983. After discovery closed, the Court granted summary judgment to Weyer, Hughes, and Dart, but determined that one of Williams' claims against Spizzirri could survive to trial. *See* Doc. 135.[1] Now, Spizzirri and Cook County request summary judgment on the grounds that Williams failed to exhaust his administrative remedies with respect to his claim against Spizzirri, and that Williams' indemnification claim against Cook County must fail for lack of an individual

---

[1] Because one of Williams' claims against an individual defendant survived, Cook County also remained as a defendant for indemnification purposes. *See* Doc. 135 at 25.

1

defendant. Williams argues that the grievance process was effectively unavailable to him because Spizzirri intimidated him. As a threshold matter, the Court finds that Williams fails to present a dispute of material fact as to whether the CCJ's grievance procedures were available to him, which obviates the need for the Court to hold a *Pavey* hearing to resolve Williams' unavailability claim. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). Regarding the merits of Spizzirri's and Cook County's motion, the Court finds that Williams failed to exhaust his administrative remedies for his claim against Spizzirri and grants their motion for summary judgment on the remaining claims.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case, as discussed in the Court's first Opinion granting in part and denying in part Defendants' motion for summary judgment. *See* Doc. 135 at 2–9.

### I.    CCDOC Policy

Williams has been a pre-trial detainee at the CCJ since March 2018. CCDOC operates the CCJ and implemented an Inmate Grievances policy ("the Policy") that applies to all inmates at the detention facility. The Policy instructs inmates how to complain about "problem[s] related to [their] conditions of confinement" including violations of "constitutional or other legal rights," risks to "safety or well-being," and "not receiving medical, dental or mental health help that you need." Doc. 150-3 at 30. While the Policy mandates that inmates filing a grievance must submit one "within 15 days of the incident," it provides that "[t]here is no time limit however for grievances involving sexual misconduct." *Id.* at 32. When filing a grievance, inmates must "provide the specific date, location and time of the incident, problem or event that [they] are grieving." *Id.* If CCDOC denies a grievance, the inmate has 15 days to appeal the denial (and

must do so to exhaust their administrative remedies pursuant to the Policy). *Id.* CCDOC published the Policy in the CCDOC Inmate Handbook, a copy of which Williams received when he arrived at the CCJ.

## II. Williams' Incidents with the Defendant Officers

### A. February 1, 2019

Williams alleged that Weyer sexually assaulted him during a routine pat-down search before attending a medical appointment. Williams complained of Weyer's conduct to Hughes, who disregarded his concerns. Weyer then allegedly pushed Williams into a wall.

### B. February 2, 2019

Williams alleged that Spizzirri assaulted and threatened him during a pat-down search outside of his cell. According to Williams' amended complaint, Spizzirri "threatened Plaintiff for having filed a grievance against [Weyer], stating that the deputies would have Plaintiff killed for reporting" this behavior. Doc. 22 ¶ 37.

### C. February 6, 2019

Williams alleged that Spizzirri once again assaulted and threatened him for filing a grievance against Weyer related to the February 1, 2019 incident. According to Williams' amended complaint, Spizzirri said he would "'see to' [Williams'] murder" and "grabbed [Williams'] genitals." *Id.* ¶¶ 39–40.

## III. Williams' Grievances

Williams filed several grievances between February 1, 2019 and July 11, 2019—the date of the last available grievance in the record.

On February 1, 2019, Williams filed a grievance against Weyer complaining about the pat-down search. Williams wrote that Weyer "fondling and squeeze my Genitals . . . And Put his

3

finger And my rectum." Doc. 106-7 at 2. Williams also reported that, "As I walk To The interlock To Tell Sheriff hughes I Need help I was sexual Assault I will Like medical help And To call my mom Sheriff Lombardi Say No You going To Shu." *Id*. The reviewing officer denied Williams' grievance on February 5, 2019, and Williams appealed the same day. The CCJ's Superintendent and Assistant Executive Director denied Williams' appeal. They wrote that the video footage did not show that Weyer sexually assaulted Williams and found that Williams' "grievance is frivolous in nature." *Id.* at 6.

On February 4, 2019, Williams filed a grievance against Nurses Thomas and O'Mackie for "refus[ing] medical help for sexual assault [after] . . . Weyer . . . squeeze[d] [Williams'] genitals." *Id.* at 9. CCDOC rejected Williams' grievance and denied his appeal as frivolous. *Id.* at 10.

On February 10, 2019, Williams filed two grievances. He filed one grievance against Spizzirri regarding the February 6 alleged assault Williams pleaded in his complaint. Williams wrote that Spizzirri told Williams that he "will be killed and murder[ed] for doing grievance and press[ing] charges on Sheriff . . . Weyer." *Id.* at 17. Williams did not allege that Spizzirri sexually assaulted him. CCDOC rejected Williams' grievance and appeal. Williams filed a second grievance against unnamed mental health employees for not providing adequate mental health in the form of trauma counselors in response to Weyer's alleged sexual assault on February 1, 2019. CCDOC rejected this grievance and subsequent appeal.

On February 16, 2019, Williams filed a grievance against Nurses Thomas and O'Mackie, Weyer, and others for the alleged sexual assault that occurred on February 1, 2019. CCDOC rejected the grievance and Williams' appeal.

4

On February 17, 2019, Williams filed a grievance against Spizzirri, alleging that he sexually assaulted and harassed him on February 12, 2019. Williams complained that Spizzirri's conduct was "for retaliation for reporting Sheriff Weyer" and wrote that he would "like to press char[g]es on Sheriff Spizzirri." *Id.* at 11. CCDOC reviewed camera footage and found that "Spizzirri appear[ed] to be conducting himself in a professional manner." *Id.* at 16. It therefore rejected Williams' grievance and subsequent appeal.

On February 18, 2019, Williams filed a grievance against Spizzirri and other officers for allegedly retaliating against him for filing separate grievances in an incident that occurred on "2-11-10-12." *Id.* at 19. Williams wrote that he has "not been free from such abu[se] as well as free from retaliation for reporting Sheriff Ward, Serooulski, Spizzirri, and Tyler." *Id.* CCDOC determined that no evidence supported Williams' grievance, thereby rejecting it and his appeal. *Id.* at 27.

On May 31, 2019, Williams filed a grievance against a Sheriff Beyer for allegedly assaulting him on camera on May 28, 2019. CCDOC reviewed the camera footage and determined that Beyer and Williams never interacted on May 28, 2019 and dismissed Williams' grievance.

On June 9, 2019, Williams filed a grievance against Officer Weyer for saying on June 7, 2019, that Williams should "'lick' HIS Balls" and perform other oral sex acts. Doc. 150-6 at 36. Williams also wrote that Weyer said that he would "kick [Williams'] ass like [Weyer] did the inmate in the interlock this morning." *Id.* Williams said that he would like to press charges against Weyer. CCDOC reviewed the grievance and determined it had insufficient evidence to act. *Id.* at 38. CCDOC thus rejected Williams' appeal for lack of evidence.

On July 8, 2019, Williams filed two grievances. Williams filed his first grievance against Weyer, CCDOC, Sheriff Dart, a John Mueller, and "All [Lieutenant] [Sergeants]" stating that he is "being sexual harassed by Deputy D, Weyer." *Id.* at 43. CCDOC denied his grievance and rejected the appeal. Williams filed his second grievance against all CCJ mental health employees and CCDOC, claiming that they provided inadequate mental health treatment after his sexual assault. CCDOC denied his grievance and rejected the appeal.

On July 11, 2019, Williams filed a grievance against Weyer for sexual assault, writing that "he touch[ed] my buttocks on camera." *Id.* at 39. CCDOC denied his grievance and rejected the subsequent appeal.

**IV.  Procedural History**

Williams sued Defendants on March 2, 2020, filing an amended complaint on June 1, 2021. Pursuant to § 1983, Williams brought sexual assault claims against Weyer and Spizzirri; failure to protect claims against Weyer, Spizzirri, and Hughes; a claim for *Monell* liability against Sheriff Dart; and an indemnification claim against Cook County. After discovery closed, Defendants filed a motion for summary judgment seeking judgment on all of Williams' claims.

The Court granted judgment to Defendants on all claims, except for Williams' sexual assault claim against Spizzirri and his indemnification claim against Cook County. Although the evidence against Spizzirri created a material dispute of fact that required a jury to resolve, the Court noted that "[w]hether Williams failed to exhaust his administrative remedies with respect to the February 2 and February 6, 2019 alleged assaults is an open question, especially given that there is no evidence of a grievance related to the February 2, 2019 incident and the grievance Williams filed on February 10, 2019 only relates to threats Spizzirri allegedly made against Williams." *Id.* at 14 n.5.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

7

## ANALYSIS

Spizzirri and Cook County argue that Williams cannot proceed on his claims because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The PLRA states that no "action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement exists to give correctional officials the chance to address complaints internally before the initiation of a federal suit. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002); *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). To have exhausted his administrative remedies, Williams must have grieved his claim through "all steps that the agency holds out," and he must have "do[ne] so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). An inmate "who does not properly take each step within the administrative process has failed to exhaust" administrative remedies and thus "is foreclosed by § 1997e(a) from litigating" his claims. *Pozo*, 286 F.3d at 1024. Where an inmate's grievance "is substantively distinct from the allegation in his federal complaint," then the inmate failed to exhaust his administrative remedies. *Bowers v. Dart*, 1 F.4th 513, 517 (7th Cir. 2021); *see id.* at 517–18 ("This disconnect between the grievance and complaint . . . meant that [plaintiff] had failed to exhaust his administrative remedies.").

Of course, "[p]risoners need only exhaust 'available remedies, not remedies that are unavailable.'" *Jackson v. Esser*, 105 F.4th 948, 956–57 (7th Cir. 2024) (quoting *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023)). "If administrative remedies are genuinely unavailable or nonexistent . . . [the courts] consider the prisoner to have satisfied the exhaustion requirement." *Id.* at 957 (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016)). "Administrative

8

remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)); *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba v. Stepp*, 458 F.3d 678, 680, 686 (7th Cir. 2006) (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison personnel prevented prisoner access to grievance forms).

Ordinarily, when a plaintiff argues that the unavailability of administrative remedies excuses his failure to exhaust them, the district court must conduct a proceeding known as a *Pavey* hearing. *See Pavey*, 544 F.3d at 742; *see Wagoner v. Lemmon*, 778 F.3d 586, 588 (7th Cir. 2015) ("Often exhaustion (or its lack) will be apparent, but when it is not, the district court must hold an evidentiary hearing to resolve the question."). While "as a matter of best practices" a court should conduct a *Pavey* hearing separate from a motion for summary judgment, the "purpose of a *Pavey* hearing is to resolve disputed factual questions that bear on exhaustion." *Id.* at 591. Yet such a hearing is not required whenever a plaintiff claims that administrative remedies are unavailable: a plaintiff must point to evidence in the record that creates a dispute of material fact, which only then necessitates a *Pavey* hearing. *See Lynch v. Corizon, Inc.*, 764 F. App'x 552, 554 (7th Cir. 2019) ("Although a judge need not believe [plaintiff's] assertions, a sworn affidavit that is 'detailed, specific, and based on personal knowledge' is competent evidence to warrant an evidentiary hearing." (quoting *Kaba*, 458 F.3d at 681)). "A court, faced

9

with an allegation that remedies were unavailable, may still grant summary judgment on exhaustion grounds if it determines that there are no genuine disputes of material fact, and, viewing the facts in the light most favorable to the nonmovant, the defendants satisfied their burden to show that remedies were available to the nonmovant as a matter of law." *Jackson*, 105 F.4th at 957.

As a threshold matter, the Court notes that the parties agree that Williams never filed a grievance regarding Spizzirri's alleged sexual assault on February 2, 2019. Indeed, it is on this basis that Spizzirri and Cook County move for summary judgment. They are correct that, under the PLRA, "[a]n inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake,* 578 U.S. 632, 638 (2016) (quoting 42 U.S.C. § 1997e(a)).

However, inmates "need only exhaust available remedies, not remedies that are unavailable." *Jackson*, 105 F.4th at 956–57 (quotations omitted). And here, in response to Spizzirri's and Cook County's motion, Williams raises that argument. Williams did not provide an affidavit swearing that Spizzirri intimidated him, nor did he state that he filed a grievance against Spizzirri noting the correct date of the incident he claims. Instead, he points to allegations contained in his amended complaint and a single grievance he filed on February 10, 2019 to argue that Spizzirri's conduct on February 2, 2019 effectively made the Policy unavailable to him. The Court reproduces Williams' recounting of the relevant facts supporting his argument in whole:

> As noted above, Plaintiff's [amended complaint] alleges that
> Spizzirri admitted that his motive for using excessive force against
> Plaintiff on February 2, 2019 was a desire to retaliate against
> Plaintiff for "having filed a grievance against WEYER." [Doc. 22
> ¶ 37.] This account is consistent with Plaintiff's February 10, 2019
> grievance, which explicitly states that Spizzirri threatened to kill

10

> him in "retaliation for reporting" the February 1, 2019 incident with Weyer. [Doc. 106-7 at 17.] Put simply, Plaintiff has consistently alleged that he was subjected to threats, intimidation, and physical abuse as retaliation for having used the Cook County Jail grievance process with respect to the February 1, 2019 incident.

Doc. 161 at 4. Williams thus attempts to create a dispute of fact by pointing to one allegation from his complaint and a single line from a grievance that complains that Spizzirri attempted to intimidate him for filing a grievance against Weyer. This reliance solely on allegations and attorney argument to create a dispute of fact as to whether Spizzirri's (alleged) intimidating conduct made the entire grievance process unavailable is ill-advised. *See Sterk*, 770 F.3d at 627 (nonmoving party "must 'go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor'" (quoting *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal quotation marks omitted))); *cf. Kaba*, 458 F.3d at 686 (remedies deemed unavailable where prisoner presented evidence of prison staff's malicious conduct intended to deter prisoner from filing grievances); *Jackson*, 105 F.4th at 957 ("[Plaintiff], though not in the clearest terms, pointed to evidence suggesting that the prison unjustifiably failed to process all of his grievances. This raised a genuine dispute about whether administrative remedies were unavailable for the issues raised in those grievances.").

      The record before the Court instead shows that no dispute of fact exists, and that Williams' claim that Spizzirri's actions made the Policy unavailable finds no basis in the evidence. Williams' own grievance history makes plain that—even accepting as true Williams' allegation that Spizzirri threatened him for filing a grievance against Weyer—Williams was never deterred from filing any grievances, against Spizzirri or otherwise. Because Williams was complaining of a sexual assault, CCDOC afforded him unlimited time to submit a grievance

11

against Spizzirri's conduct. In the period after the alleged February 2, 2019 incident, Williams filed: a grievance on February 4, 2019 against two nurses for providing him with inadequate medical treatment in the wake of Weyer's alleged assault on February 1, 2019; a grievance on February 10, 2019 against Spizzirri for threatening and intimidating Williams in retaliation for filing a grievance against Weyer in an incident that allegedly took place on February 6, 2019; a grievance on February 16, 2019, reprising Williams' February 1, 2019 grievance against two nurses and Weyer; and a grievance on February 17, 2019 against Spizzirri for sexual assault and retaliation for reporting Weyer, in an incident that allegedly occurred on February 12, 2019; and a grievance on February 18, 2019 against Spizzirri and other officers for retaliation, in an event that allegedly occurred on "2-11-10-12 2019," Doc. 106-7 at 19. Williams continued to file multiple grievances for sexual assault against Weyer and other officers through July 2019. *See* Doc. 106-7 at 31–46. In short, in the days, weeks, and months after Spizzirri was supposed to have intimidated Williams, allegedly making him afraid to file grievances against Spizzirri or Weyer, Williams filed repeated and repetitive grievances against both Spizzirri, Weyer, and others.

In sum, Williams failed to present any evidence that Spizzirri's alleged conduct intimidated him and rendered the grievance process unavailable, meaning no dispute of material fact exists as to whether Williams had access to the CCDOC's grievance process. These facts make this case unlike circumstances where prison officials' conduct makes the grievance process unavailable to an inmate. *See, e.g.*, *Thomas*, 787 F.3d at 847–48 (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba*, 458 F.3d at 680, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other

inmates to attack him in retaliation for filing grievances"); *Dale*, 376 F.3d at 656 (remedies unavailable where prison personnel prevent prisoner access to grievance forms). Instead, the record shows that Williams filed multiple grievances against Spizzirri, Weyer, and other CCJ officers and employees even after Spizzirri's allegedly intimidating conduct—meaning the grievance process was available to Williams. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (deeming administrative remedies available and satisfied after prisoner "had filed a grievance and appealed the Jail's response"). Accordingly, the Court need not conduct a *Pavey* hearing because Williams failed to raise "sufficient factual allegations demonstrating a genuine dispute as to whether the administrative remedies were available to him." *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023) ("A court can grant a motion for summary judgment without holding a *Pavey* hearing only if, after taking the facts in the light most favorable to the nonmovant ([Plaintiff]), the court determines that there are no genuine issues of material fact, and the defendants met their burden of establishing that the grievance process was available to [Plaintiff] as a matter of law.").

The Court returns to where it began. Williams never filed (and does not claim to have filed) a grievance claiming that Spizzirri assaulted and threatened Williams in retaliation for his grievance against Weyer on February 2, 2019—the allegation in his amended complaint on which his claim against Spizzirri rests. *See Ross*, 578 U.S. at 638 ("An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." (quoting 42 U.S.C. § 1997e(a))). Although Williams filed grievances against Spizzirri for incidents that allegedly occurred on February 6, 2019, February 12, 2019, and "2-11-10-12," 150-6 at 19, the absence of a grievance for an incident that occurred on February 2, 2019, means that he never grieved this claim according to CCDOC's procedures.

13

*See* Doc. 150-3 at 32 (stating that the Policy requires inmates to "provide the specific date, location and time of the incident, problem or event that [they] are grieving"); *see also Bowers*, 1 F.4th at 517 (when there is a "disconnect between the grievance and complaint" the PLRA bars the complaint). And Williams cannot point to his other grievances listing incidents that allegedly occurred on other dates since those are all "substantively distinct from the allegation in his federal complaint." *Bowers*, 1 F.4th at 517. The PLRA thus poses an insurmountable bar to Williams' claim against Spizzirri. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Accordingly, the Court grants Spizzirri's motion for summary judgment and enters judgment for him against Williams' complaint.

Because the Court has now granted summary judgment to all the Defendant Officers against whom Williams brought claims, the Court also grants summary judgment to Cook County on Williams' indemnification claim as there is no party left for Cook County to indemnify. *See* 745 Ill. Comp. Stat. 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment . . . for which it or an employee while acting within the scope of his employment is liable[.]").

## CONCLUSION

The Court grants Spizzirri's and Cook County's motion for summary judgment [149]. The Court enters judgment for all Defendants on Williams' amended complaint and terminates this case.

Dated: August 12, 2024

_____
SARA L. ELLIS
United States District Judge